**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMIA**

XAVIER CERVERA
28 Wentworth Street
Charleston, SC 29401

       *Plaintiff,*

    v.

MICHAEL CHEUNG
a/k/a Michael Hoi-ming Cheung
16 Jessie Street, Apt. 305
San Francisco, CA  94105
       *Defendant.*

Civil Action No. 1:14-cv-1487

FreeText

**COMPLAINT FOR CONFESSED JUDGMENT**
**ON PERSONAL GUARANTY**

Now Comes Xavier Cervera, through undersigned counsel, and as his Complaint herein against Michael Cheung states and alleges as follows:

1.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.    The Court has personal jurisdiction over the Defendant pursuant to D.C. Code § 13-423, including but not limited to the fact that the negotiable instrument upon which recovery is sought was executed and delivered in the District of Columbia and that this claim is based upon a guaranty and surety on such note, also in the District of Columbia.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim -- including but not limited to the execution and delivery of the negotiable instrument and surety upon which recovery is sought -- occurred in the District of Columbia.

4. Plaintiff, Xavier Cervera, is a citizen and resident of the State of South Carolina.

5. Plaintiff Xavier Cervera is beneficiary and Holder of a certain Confessed Judgment Promissory Note executed by Barrack's Row Ent. Group, LLC ("Barrack's Row") as Maker, dated and effective as of December 31, 2012, in the original face value of $1,663,600.00 (the "Note"). A true and correct copy of the Note, with associated Limited Personal Guaranty, is attached hereto as Exhibit A.

6. Defendant Michael Cheung is, upon information and belief, a citizen and resident of the State of California, residing at 16 Jessie Street, Apt. 305, San Francisco, CA 94105. Upon information and belief, Defendant Cheung holds a direct or indirect equity interest in Barrack's Row Ent. Group, LLC, which owns and operates nine (9) restaurants in the District of Columbia. He is a personal guarantor on the Note.

7. The Note was executed and delivered in the District of Columbia on behalf of Barracks Row and provides, *inter alia*, that the Note "may be enforced, in Holder's sole discretion, in .... the District of Columbia." Note Section I(D).

8. The Note provides, *inter alia,* that upon failure to render timely payment "this Note may be presented to any court of competent jurisdiction without contest, to secure a confessed judgment to be enforced by such court..." Note Section V.

9.     The District of Columbia recognizes and enforces confessions of judgment in contractual agreements.  See D.C. SUP. CT. R. CIV. P. 68-I(c)-(d).

10.     As a material inducement to Plaintiff to accept the Note as payment, Defendant executed and delivered to Plaintiff in the District of Columbia a "Limited Personal Guaranty of Obligations" under the Note ("Personal Guaranty").

11.     Pursuant to that Personal Guaranty, Defendant agreed to be bound by and to honor "every item, covenant, condition, provision and obligation" of the Note.   Personal Guaranty ¶ 1.

12.     Pursuant to that Personal Guaranty, Defendant agreed: "The liability of Guarantor is coextensive with that of Maker and also joint and several, and legal action may be brought against Guarantor and carried to final judgment either with or without making Maker ... a party thereto."  Personal Guaranty ¶2.

13.     The Note is now in default.  Upon default under the Note, the entire amount then due and owing under the Note was accelerated, with default interest accruing at the rate of 18 percent per annum.  Section IV(A).

14.     On March 28, 2014, Barrack's Row and its subsidiaries all filed for protection under Chapter 11 of the United States Bankruptcy Code and remain in Chapter 11 proceedings as of this filing. See *In re: Barrack's Row Ent. Group LLC*, Case No. 14-00168 (Bnkr. D.C.). Such act constituted an Event of Default under the Note.  Section III(C) and (D).

15.     Since Maker's bankruptcy filing, no payments have been received by Plaintiff under the Note from any source.   Failure to timely pay or cure an installment or accelerated balance due under the Note constituted an Event of Default under the Note. Section III(A)

16.     Since Maker's bankruptcy filing, no payments have been received by Plaintiff or other Holders as required under the Seller Notes, which is a cross-default provision and Event of Default under the Note.  Section III(B).

17.     The Note has not been paid, waived, compromised or otherwise discharged or dissolved.  As of the date of this filing, the Note remains in default according to its terms and conditions, and the remaining balance due on the Note, including contractual interest, late fees, attorney's fees, and other costs as set forth in the Note, is payable in full and remains as of the date of this Complaint unpaid.

18.     The Personal Guaranty provides, *inter alia*, that the total guaranteed amount of all guarantors shall be released "as soon as there has been a total payment to Holder under the Note of, principal totaling Four Hundred Thousand Dollars ($400,000.00)("Maximum Guaranteed Principal"), in addition to any and all unpaid accrued interest on the Maximum Guaranteed Principal." Personal Guaranty ¶ 4.

19.     The Personal Guaranty further provides, *inter alia,* that each individual Guarantor's obligation to make payment on the Maximum Guaranteed Principal is limited to the percentage of Guaranty set forth in the Guaranty.  Personal Guaranty ¶ 4.

20.     As defined in the Personal Guaranty, Defendant's percentage of that obligation for repayment of the Maximum Guaranteed Principal was Forty One and 36/00 Percent (41.36%).

21.     As of the date of last payment to Plaintiff, a total of $1,586,726.01 in principal remained due on the Note, and only $76,873.99 in principal had been paid.  See Exhibit B hereto. As such, the condition precedent for release of the Personal Guaranty with respect to Defendant has not occurred.

22.     The Personal Guaranty provides that Defendant is responsible for "any and all costs and expenses, including reasonable attorneys' fees, which may be incurred by Holder in connection with any default by Maker under the Note or enforcing the Note and/or this Guaranty." Personal Guaranty ¶1.

23.     The Personal Guaranty provides that, in addition to payment of the specified percentage of Maximum Guaranteed Principal, Defendant is responsible for "each and every item, covenant, condition, provision and obligation [of the Note] to be paid, kept, observed or performed." Personal Guaranty ¶1.  This includes payment of accrued interest as otherwise due under the Note following default.

## COUNT I
### Breach of Contract (Surety and Guaranty)

24.     Plaintiff restates and incorporates herein by reference the allegations in the above-numbered paragraphs as of fully set forth herein.

25.     By the acts and omissions set forth above, Defendant owed to Plaintiff a contractual obligation to cause the obligations of Maker under the Note to be performed, and upon such failure in performance, to pay to Plaintiff monies owed and otherwise perform those duties as set forth within the Note and Personal Guaranty.

26.    Defendant has notice and actual knowledge of the failure of Maker to honor the Note and of the Maker's default under the Note, yet has failed to honor his contractual responsibilities under the Personal Guaranty.

27.    Plaintiff has suffered damages as a result of this breach of contract by Defendant, in an amount to be determined but not less than the amounts more specifically set forth below.

WHEREFORE, the Plaintiff requests this Honorable Court:

A.    Grant Judgment by Confession in favor of Plaintiff and against the Defendant for its proportion of the Maximum Guaranteed Principal in the total amount of $165,440.00 ($400,000.00 x 41.36%);

B.    Grant Judgment by Confession in favor of Plaintiff and against the Defendant for interest accruing and payable on the Note following default, calculated at the rate of 18% per annum on the accelerated Note balance of $1,586,726.01 (approximately $23,800.89 per month commencing April 1, 2014);

C.    Grant Judgment in favor of Plaintiff and against the Defendant for Plaintiff's costs and reasonable attorneys fees incurred in pursuing collection of the Note against Maker and Guarantor, as provided in the Personal Guaranty, such amount to be established upon conclusion of this matter through whatever supplemental evidentiary proceedings this Court deems appropriate.

D.    Grant such other relief as may be established as justified in this matter and as the Court deems just and proper.

Respectfully Submitted:

August 28, 2014

XAVIER CERVERA
By Counsel:

James M. Loots #384763
Law Offices of James M. Loots PC
634 G Street SE #200
Washington DC 20003
(202) 536-5650
jloots@lootslaw.com

EXHIBIT A:  Confessed Judgment Promissory Note with Limited Guaranty

EXHIBIT B:  Calculation of Note Balance

# EXHIBIT "A"

**IMPORTANT NOTICE**

THIS INSTRUMENT CONTAINS A **CONFESSION** OF **JUDGMENT** PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

## CONFESSED JUDGMENT
## PROMISSORY NOTE
## WITH LIMITED PERSONAL GUARANTY

$ 1,663,600.00

Washington DC
December 31, 2012

## I. TERMS OF NOTE

FOR VALUE RECEIVED, Barrack's Row Ent. Group LLC, a Delaware limited liability company ("Maker") and Maker's successors and assigns, promises to pay to the order of Xavier Cervera, 1315 Independence Avenue SE, #6, Washington, DC 20003 (the "Holder"), or at such other place as the Holder of this Note may from time to time designate, the principal amount of One Million Six Hundred Sixty Three Thousand Six Hundred Dollars ($1,663,600.00).

Maker hereby acknowledges an existing debt and obligation to Holder in the principal amount set forth above pursuant to the terms of that certain Purchase Agreement dated November 14, 2012, as amended, by and among Xavier Cervera, William Sport and Andrea Gentile, collectively as "Sellers," and Maker, as purchaser (the "Purchase Agreement"), including but not limited to Section 1.03(iii)(c) of the Purchase Agreement and hereby waives any right or claim which might otherwise arise to contest the existence or validity of said debt and obligation. Maker and Holder stipulate and agree that the Sellers shall continue to hold their respective Promissory Notes dated December 31, 2012 ("Seller Notes") according to the terms and conditions of such Seller Notes, and that any rights and interests of Holder under the instant Note shall be subordinate to the Seller Notes only insofar as may be necessary to determine priority of right in payment upon default of the Seller Notes, but shall otherwise constitute an independent and separately enforceable obligation of Maker due to Holder. Nothing in this Note shall be deemed to in any way alter or amend the Purchase Agreement, any security agreement inuring to the benefit of Sellers, including Holder, nor any existing Seller Note.

This Note shall bear interest at a rate of Five Percent (5%) per annum, fully amortized and compounded monthly, not to exceed the highest rate allowed by law. Provided, however, that payments and interest shall not begin to accrue on the debt hereunder until April 1, 2013, and no payment shall be due until May 1, 2013.

A.    Payment; Form and Schedule

The Maker shall repay the full amount hereof in One Hundred Eighty (180) amortized monthly payments of Thirteen Thousand Two Hundred Four Dollars and 28/00 ($13,204.28),

Page 1 of 8

Confessed Judgment Promissory Note

Maker's Initials: _____

with the first such payment due and payable on May 1, 2013. Holder shall make subsequent monthly payments in the amount of Thirteen Thousand One Hundred Fifty Five and 64/00 Dollars ($13,155.64) on or before the first day of each subsequent calendar month until the entire debt hereof is paid in full. Payment is due to be received in the offices of Holder or its designee, or to be wire transferred to Holder's account at Maker's expense, on or before close of business and each successive month following the initial payment thereafter, and continuing until all outstanding amounts hereunder, including principal, interest, and other charges, shall be due and paid in full.

The Maker shall pay the full amount hereof in installments made in cash, by money order, certified check, bank check or wire transfer, in the lawful money of the United States, drawn and payable to Holder to be delivered to Holder at the address set forth above, (or such other location as Holder shall designate from time to time in writing) on or before the date due, or otherwise on the dates and in the amounts set forth in this Note.

Any payment on this Note coming due on a day which is a legal holiday in the place at which a payment is to be made hereunder shall be made on the next succeeding day which is a business day in such place.

Any payment which is not received by Holder within ten (10) calendar days of the due date shall, in addition to all other sums due and payable, be assessed a late charge equal to five percent (5%) of the amount which was not timely paid.

Should at any time for any reason, Maker breach any term or condition of this Note not cure such breach within thirty (30) days after written notice of such default, then this Note shall become due in full without further demand for payment or action on the part of Holder.

B.   Prepayment of Debt

The unpaid principal amount of this Note may not be prepaid in whole or part at any time or times provided, it being the intent of the Maker and the demand of the Holder that the full amount of interest and periodic payments be made as scheduled and set forth herein without alteration, prepayment or adjustment.

C.   Successors and Assigns

Whenever used herein, the words "Maker" and "Holder" and "Obligor" shall be deemed to include their respective successors and assigns. Holder may, in its sole discretion, transfer or assign its rights and interests in this Note.

D.   Jurisdiction

This Note shall be governed by and construed under and in accordance with the laws of the State of Maryland (but not including the choice of law rules thereof), and may be enforced, in Holder's sole discretion, in State of Maryland, the Commonwealth of Virginia, the District of

Page 2 of 8

Confessed Judgment Promissory Note

Maker's Initials: _____

Columbia or such other forum as may have proper jurisdiction over the subject hereof.

## II. ADDITIONAL COVENANTS OF MAKER

For so long as any amounts are due to Holder under this Note, Maker shall, on behalf of itself and each of the Companies identified below, strictly adhere to and abide by the following covenants, time being of the essence and failure of which shall be material default under this Agreement:

A.      Maker shall maintain control and ownership of the following Companies:

(a)    Barrack's Row Entertainment, LLC;
(b)    Lola's, LLC;
(c)    Molly Malone's, LLC;
(d)    Senart's Oyster House, LLC;
(e)    Eastern Market Entertainment, LLC;
(f)    Pacifico on Eighth, LLC;
(g)    Stadium Sports, LLC;
(h)    Hawk n' Dove Entertainment, LLC; and
(i)    Canal Park Entertainment, LLC

B.      Maker shall cause any and all real property leases for each of the Companies to remain in good standing and current, and shall not suffer or permit any breach of same. Maker shall ensure Holder receives prompt written notice of each and every alleged breach of any such lease.

C.      Maker shall cause any and all licenses and authorities for the retail sale of alcoholic beverages for each of the Companies to remain in good standing and current, and shall not suffer or permit any uncured violation of same. Make shall ensure Holder receives prompt written notice of each and every alleged violation of any such liquor license.

D.      Maker shall not cause or permit any material asset of any Company, including but not limited to its leases, to be transferred to any third party.

E.      Maker shall continue to operate each Company's business under the same trade name in substantially the same manner and theme as existed as of the date of Closing.

F.      Maker shall not permit any debt, lien or encumbrance on itself or any of the Companies (or assets of Maker or the Companies) that could be in superior position to that created by this Agreement in favor of Holder or the Sellers. Provided, however, that the specific debts, terms and conditions under which Bank Debt are permitted pursuant to the Purchase Agreement and all existing Seller Notes shall be permitted notwithstanding this provision, including as a material inducement to Holder, the agreement of Maker to pay the Bank Debt and Seller Notes in full within the schedule, terms and conditions set forth in the Purchase Agreement.

Page 3 of 8

Confessed Judgment Promissory Note

Maker's Initials: _____

G.     Maker shall not incur or permit any debt, lien or encumbrance on itself or any of the Companies except as may arise in the ordinary course of business, without written permission of Holder in Holder's sole discretion, regardless of whether such lien or encumbrance would be inferior to that of Holder.  Provided, however, that the specific debts, terms and conditions under which Bank Debt are permitted pursuant to the Purchase Agreement shall be permitted notwithstanding this provision, including as a material inducement to Holder, the agreement of Maker to pay the Bank Debt in full within the schedule, terms and conditions set forth in the Purchase Agreement.

## III. EVENTS OF DEFAULT

The occurrence of any one or more of the following shall constitute an event of default ("Event of Default") hereunder, and except for Sections III(A) and III(B). below, the Maker covenants and agrees to give the Holder prompt written notice of the occurrence of any one or more of the following:

A.     Failure to pay, when due, any sum payable hereunder, and continuance of such failure for thirty (30) days after the date on which such sum is due;

B.     Failure to pay, when due, any sum payable to any Holder under any Seller Note;

C.     The commencement by Maker or any Company of any case, proceeding, or other action seeking reorganization, arrangement, adjustment, liquidation, dissolution, or composition of it or its debts under any law relating to bankruptcy, insolvency, or reorganization, or relief of debtors, or seeking appointment of a receiver, trustee, custodian, or other similar official for it or for all or any substantial part of its property; and

D.     The commencement of any case, proceeding, or other action against Maker or any Company seeking to have any order for relief entered against Maker or any Company as debtor, or seeking reorganization, arrangement, adjustment, liquidation, dissolution, or composition of Maker or any Company or its debts under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors, or seeking appointment of a receiver, trustee, custodian, or other similar official for Maker or for all or any substantial part of the property of Maker or any Company, and (i) Maker and each Company shall, by any act or omission, indicate its consent to, approval of, or acquiescence in such case, proceeding, or action, or (ii) such case, proceeding, or action results in the entry of an order for relief which is not fully stayed within seven (7) business days after the entry thereof, or (iii) such case, proceeding, or action remains undismissed for a period of fifteen (15) days or more or is dismissed or suspended only pursuant to Section 305 of the United States Bankruptcy Code or any corresponding provision of any future United States bankruptcy law.

E.     The sale, transfer, or other disposition, whether voluntary or involuntary and whether or not by operation of law, of any or all interest in Maker, or any or all of Maker's interest in any Company, or any business asset of Maker or any Company.

F.     The breach of any real property lease agreement of Maker or any Company beyond the expiration of any applicable cure period.

Page 4 of 8

Confessed Judgment Promissory Note                          Maker's Initials: ___

G.    The failure to pay when due any amount of Bank Debt of Maker or any Company beyond the expiration of any applicable cure period.

H.    The creation or existence of any Bank Debt or other Secured Debt that in aggregate exceeds Five Million Dollars ($5,000,000.00) for Maker, any Company, combination of Companies, or combination of Companies and Maker.

I.    The revocation, suspension or determination of primary violation of any liquor license of Maker or any Company.

J.    The breach of any covenant of Maker under this Note (except for the failure to pay any sum payable hereunder), including but not limited to the Security Interests created herein, and the failure to cure the same within 30 days after written notice of such default from Holder; provided, however, the should the default be one incapable of cure by payment of money but capable of cure by Maker's actions that cannot be reasonably completed within the 30-day cure period despite dilliegent efforts by Maker to immediately effect such cure, Maker may request Holder to approve an extension of such cure period of not more than forty-five additional days, which request shall not be unreasonably withheld.

## IV. HOLDER'S RIGHTS

A.    Event of Default by Maker

Upon the occurrence of any such Event of Default hereunder, the entire principal amount hereof shall be accelerated, and shall be immediately due and payable, at the option of the Holder, without demand or notice, and in addition thereto, and not in substitution therefor, the Holder shall be entitled to exercise any one or more of the rights and remedies provided by applicable law.

In the Event of Default, any amount due from Maker to Holder herein which is not paid when due shall bear interest at a rate equal to eighteen percent (18%) from the date due until paid, but the payment of such interest shall not excuse or cure any Event of Default by Maker under this Note.

Failure to exercise said options or to pursue remedies available under this Note shall not constitute a waiver of such option or such other remedies or of the right to exercise any of the same in the event of any subsequent Event of Default hereunder.

Except as otherwise specifically set forth herein, each Obligor (which term shall include the Maker and all makers, sureties, guarantors, endorsers, and other persons assuming obligations pursuant to this Note) under this Note hereby waives presentment, protest, demand, notice of dishonor, and all other notices, and all defenses and pleas on the grounds of any extension or extensions of the time of payments after maturity, with or without notice. No renewal or extension of this Note, no release or surrender of any collateral given as security for this Note, nor release of any Obligor, and no delay in enforcement of this Note or in exercising any right or power hereunder, shall affect the liability of any Obligor. The pleading of any statute of limitations as a defense to any demand against any Obligor is expressly waived.

In the event of Default, then in addition to any other remedies available to Holder, Holder shall be entitled to payment of its reasonable attorneys fees and expenses incurred in seeking and securing compliance with Maker's obligations under this Note, including but not limited to costs of litigation if and when, in Holder's sole discretion, such litigation may be warranted.

B.          Exercise of Holder's Rights

No single or partial exercise by the Holder of any right hereunder, or under any other agreement given as security for this Note or pertaining hereto, shall preclude any other or further exercise thereof or the exercise of any other rights. No delay or omission on the part of the Holder in exercising any right hereunder shall operate as a waiver of such right or of any other right under this Note.

## V. CONFESSION OF JUDGMENT

Maker specifically acknowledges and agrees that if, for any reason, Maker fails to render timely payments to Holder as specified in the terms of this Note, that this Note may be presented to any court of competent jurisdiction without contest, to secure a confessed judgment to be enforced by such court against Maker in the full amount set forth herein, less any payments previously made to Holder under this Note plus costs and reasonable attorneys' fees.

**A CONFESSION OF JUDGMENT AND APPOINTMENT OF ATTORNEY-IN-FACT IS A MATERIAL PART OF THIS NOTE  TO THE EXTENT THIS NOTE IS TO BE ENFORCED IN THE COMMONWEALTH OF VIRGINIA, MAKER HEREBY PERMANENTLY AND IRREVOCABLY APPOINTS WILLIAM BURTON, ESQ. AS MAKER'S ATTORNEY IN FACT FOR PURPOSES OF ENTERING CONFESSED JUDGMENT AGAINST MAKER IN ANY COURT OF COMPETENT JURISDICTION IN VIRGINIA.**

**BY HIS/HER SIGNATURE BELOW, EACH OF THE INDIVIDUAL(S) EXECUTING THIS AGREEMENT ON BEHALF OF MAKER PERSONALLY WARRANTS AND REPRESENTS THAT HE HAS FULL AND ADEQUATE AUTHORITY TO BIND THE ENTITY LISTED, AND THAT ALL NECESSARY APPROVALS AND AUTHORITIES HAVE BEEN OBTAINED.**

**IN WITNESS WHEREOF,** the undersigned Maker duly executed this Note, or has caused this Note to be duly executed on Maker's behalf, as of the day and year first set forth above.

December 31, 2012

BARRACK'S ROW ENT GROUP LLC

By:_____

William Nimmo, Managing Member

By:_____

Richard Cervera, Managing Member

Maker's Initials: _____

# LIMITED PERSONAL GUARANTY OF OBLIGATIONS

In order to induce Xavier Cervera ("Holder") to accept in lieu of immediate payment certain indebtedness to Holder by BARRACK'S ROW ENT. GROUP LLC ("Maker") as evidenced by that certain Confessed Judgment Promissory Note dated December 31, 2012 in the original face value principal amount of $1,669,750.00 )("Note"), WILLIAM NIMMO, MICHAEL CHEUNG, EDWARD CHEUNG, RICHARD CERVERA, and GREG COTTER (jointly and severally "Guarantor") hereby unconditionally, absolutely and irrevocably guarantee to Holder, and his successors and assigns, the prompt and full payment and performance by Maker of each and every item, covenant, condition, provision and obligation to be paid, kept, observed or performed by Maker under the Note, together with any and all costs and expenses, including reasonable attorneys' fees, which may be incurred by Holder in connection with any default by Maker under the Note or enforcing the Note and/or this Guaranty (collectively the "Obligations").

Guarantor expressly acknowledges that he has reviewed the Note and understands same. The liability of Guarantor is coextensive with that of Maker and also joint and several, and legal action may be brought against Guarantor and carried to final judgment either with or without making Maker or any assignee or successor thereof as a party thereto. Guarantor agrees not to assert as a defense to liability any forbearance, change in terms, lack of notice to Guarantor, modification or other change or delay in enforcing the terms and conditions of the Note, and hereby expressly reaffirms Guarantor's obligations under any such modified Note.

Guarantor represents and warrants that he has or will receive a material benefit from the Maker of the Note, and that as such Guarantor is a surety for value and compensation as to the Note, and executes this Guaranty of his own volition and without duress or hardship.

Notwithstanding the foregoing, the total liability to Guarantor under the Note upon default may not exceed a total of, and shall be released fully and permanently against Guarantor as soon as there has been a total payment to Holder under the Note of, principal totalling **Four Hundred Thousand Dollars ($400,000.00) ("Maximum Guaranteed Principal"), in addition to any and all unpaid accrued interest on the Maximum Guaranteed Principal.** Each individual Guarantor's obligation to make payment on this Guaranty is limited to the percentage of Guaranty set forth below. No individual Guarantor shall have any right to subrogation to or from the Maker or any other individual Guarantor unless and until the Holder is paid in full as to the full and complete amount due to Holder under this Guaranty. Any amount due and owing to Holder on the Note as of the date of default in excess of the Maximum Guaranteed Principal (plus any accrued unpaid interest on the Maximum Guaranteed Principal shall remain due and owing by Maker to Holder, but shall not be subject to this Guaranty. and the Maker shall remain liable to Holder for the full amont remaining due after credit for payments made from Guarantor or any other source regardless of any payments made under this Guaranty.

This Guaranty may be executed in counterpart, with each individual counterpart constituting a valid and fully enforceable original obligating the individual who executed this document, regardless of the status of execution or enforceability of this Guaranty against any other individual.

Page 7 of 8

Confessed Judgment Promissory Note

Maker's Initials: _____

IN WITNESS WHEREOF, the undersigned has executed this Guaranty under seal effective as of the date set forth below:

_____
William Nimmo
SSN: ████████████
Date: _____12-31-12_____
As to 25.68% of the Guaranty Amount


_____
Michael Cheung
SSN: _____
Date: _____
As to 41.36% of the Guaranty Amont


_____
Edward Cheung
SSN: _____
Date: _____
As to 20.00% of the Guaranty Amount

_____
Richard Cervera
SSN: ████████████████
Date: _____12-31-12_____
As to 7.5% of the Guaranty Amount


_____
Greg Cotter
SSN: _____
Date: _____
As to 5.46% of the Guaranty Amount

IN WITNESS WHEREOF, the undersigned has executed this Guaranty under seal effective as of the date set forth below:

_____
William Nimmo
SSN: _____
Date: _____
As to 25.68% of the Guaranty Amount


_____
Michael Cheung
SSN: _____
Date: ___4/4/13___
As to 41.36% of the Guaranty Amont


_____
Edward Cheung
SSN: _____
Date: _____к____4/2/13___
As to 20.00% of the Guaranty Amount


_____
Richard Cervera
SSN: _____
Date: _____
As to 7.5% of the Guaranty Amount


_____
Greg Cotter
SSN: _____
Date: _____
As to 5.46% of the Guaranty Amount


Page 8 of 8

IN WITNESS WHEREOF, the undersigned has executed this Guaranty under seal effective as of the date set forth below;

William Nimmo
SSN: _____
Date: _____
As to 25.68% of the Guaranty Amount

Michael Cheung
SSN: _____
Date: _____
As to 41.36% of the Guaranty Amount

Edward Cheung
SSN: _____
Date: _____
As to 20.00% of the Guaranty Amount

Richard Cervera
SSN: _____
Date: _____
As to 7.5% of the Guaranty Amount

Greg Cotter
SSN: _____
Date: 4/1/12
As to 5.46% of the Guaranty Amount

Page 8 of 8

Confessed Judgment Promissory Note

Maker's Initials:

# EXHIBIT "B"

## Revised Loan Amortization Schedule

| # | Date | Payment | Interest | Principal | Balance |
|---|------|---------|----------|-----------|---------|
| 1 | May 2013 | $13,204.28 | $6,931.67 | $6,272.61 | $1,657,139.39 |
| 2 | Jun 2013 | $13,204.28 | $6,905.53 | $6,298.75 | $1,651,028.64 |
| 3 | Jul 2013 | $13,204.28 | $6,879.29 | $6,324.99 | $1,644,703.65 |
| 4 | Aug 2013 | $13,204.28 | $6,852.93 | $6,351.35 | $1,638,352.30 |
| 5 | Sep 2013 | $13,204.28 | $6,826.47 | $6,377.81 | $1,631,974.49 |
| 6 | Oct 2013 | $13,204.28 | $6,799.89 | $6,404.39 | $1,625,570.10 |
| 7 | Nov 2013 | $13,204.28 | $6,773.21 | $6,431.07 | $1,619,139.03 |
| 8 | Dec 2013 | $13,204.28 | $6,746.41 | $6,457.87 | $1,612,681.16 |
| **#** | **Date** | **Pmt** | **Interest** | **Principal** | **Balance** |
| 9 | Jan 2014 | $13,204.28 | $6,719.50 | $6,484.78 | $1,606,196.38 |
| 10 | Feb 2014 | $13,155.64 | $6,692.48 | $6,463.16 | $1,599,733.22 |
| 11 | Mar 2014 | $13,155.64 | $6,665.56 | $6,490.08 | $1,593,243.14 |
| 12 | Apr 2014 | $13,155.64 | $6,638.51 | $6,517.13 | $1,586,726.01 ← |
| 13 | May 2014 | $13,155.64 | $6,611.36 | $6,544.28 | $1,580,181.73 |
| 14 | Jun 2014 | $13,155.64 | $6,584.09 | $6,571.55 | $1,573,610.18 |
| 15 | Jul 2014 | $13,155.64 | $6,556.71 | $6,598.93 | $1,567,011.25 |
| 16 | Aug 2014 | $13,155.64 | $6,529.21 | $6,626.43 | $1,560,384.82 |
| 17 | Sep 2014 | $13,155.64 | $6,501.60 | $6,654.04 | $1,553,730.78 |
| 18 | Oct 2014 | $13,155.64 | $6,473.88 | $6,681.76 | $1,547,049.02 |
| 19 | Nov 2014 | $13,155.64 | $6,446.04 | $6,709.60 | $1,540,339.42 |
| 20 | Dec 2014 | $13,155.64 | $6,418.08 | $6,737.56 | $1,533,601.86 |
| **#** | **Date** | **Pmt** | **Interest** | **Principal** | **Balance** |
| 21 | Jan 2015 | $13,155.64 | $6,390.01 | $6,765.63 | $1,526,836.23 |
| 22 | Feb 2015 | $13,155.64 | $6,361.82 | $6,793.82 | $1,520,042.41 |
| 23 | Mar 2015 | $13,155.64 | $6,333.51 | $6,822.13 | $1,513,220.28 |
| 24 | Apr 2015 | $13,155.64 | $6,305.08 | $6,850.56 | $1,506,369.72 |
| 25 | May 2015 | $13,155.64 | $6,276.54 | $6,879.10 | $1,499,490.62 |
| 26 | Jun 2015 | $13,155.64 | $6,247.88 | $6,907.76 | $1,492,582.86 |
| 27 | Jul 2015 | $13,155.64 | $6,219.10 | $6,936.54 | $1,485,646.32 |
| 28 | Aug 2015 | $13,155.64 | $6,190.19 | $6,965.45 | $1,478,680.87 |
| 29 | Sep 2015 | $13,155.64 | $6,161.17 | $6,994.47 | $1,471,686.40 |
| 30 | Oct 2015 | $13,155.64 | $6,132.03 | $7,023.61 | $1,464,662.79 |
| 31 | Nov 2015 | $13,155.64 | $6,102.76 | $7,052.88 | $1,457,609.91 |
| 32 | Dec 2015 | $13,155.64 | $6,073.37 | $7,082.27 | $1,450,527.64 |
| **#** | **Date** | **Pmt** | **Interest** | **Principal** | **Balance** |
| 33 | Jan 2016 | $13,155.64 | $6,043.87 | $7,111.77 | $1,443,415.87 |

| # | Date | Pmt | Interest | Principal | Balance |
|---|------|-----|----------|-----------|---------|
| 34 | Feb 2016 | $13,155.64 | $6,014.23 | $7,141.41 | $1,436,274.46 |
| 35 | Mar 2016 | $13,155.64 | $5,984.48 | $7,171.16 | $1,429,103.30 |
| 36 | Apr 2016 | $13,155.64 | $5,954.60 | $7,201.04 | $1,421,902.26 |
| 37 | May 2016 | $13,155.64 | $5,924.59 | $7,231.05 | $1,414,671.21 |
| 38 | Jun 2016 | $13,155.64 | $5,894.46 | $7,261.18 | $1,407,410.03 |
| 39 | Jul 2016 | $13,155.64 | $5,864.21 | $7,291.43 | $1,400,118.60 |
| 40 | Aug 2016 | $13,155.64 | $5,833.83 | $7,321.81 | $1,392,796.79 |
| 41 | Sep 2016 | $13,155.64 | $5,803.32 | $7,352.32 | $1,385,444.47 |
| 42 | Oct 2016 | $13,155.64 | $5,772.69 | $7,382.95 | $1,378,061.52 |
| 43 | Nov 2016 | $13,155.64 | $5,741.92 | $7,413.72 | $1,370,647.80 |
| 44 | Dec 2016 | $13,155.64 | $5,711.03 | $7,444.61 | $1,363,203.19 |
| **#** | **Date** | **Pmt** | **Interest** | **Principal** | **Balance** |
| 45 | Jan 2017 | $13,155.64 | $5,680.01 | $7,475.63 | $1,355,727.56 |
| 46 | Feb 2017 | $13,155.64 | $5,648.86 | $7,506.78 | $1,348,220.78 |
| 47 | Mar 2017 | $13,155.64 | $5,617.59 | $7,538.05 | $1,340,682.73 |
| 48 | Apr 2017 | $13,155.64 | $5,586.18 | $7,569.46 | $1,333,113.27 |
| 49 | May 2017 | $13,155.64 | $5,554.64 | $7,601.00 | $1,325,512.27 |
| 50 | Jun 2017 | $13,155.64 | $5,522.97 | $7,632.67 | $1,317,879.60 |
| 51 | Jul 2017 | $13,155.64 | $5,491.16 | $7,664.48 | $1,310,215.12 |
| 52 | Aug 2017 | $13,155.64 | $5,459.23 | $7,696.41 | $1,302,518.71 |
| 53 | Sep 2017 | $13,155.64 | $5,427.16 | $7,728.48 | $1,294,790.23 |
| 54 | Oct 2017 | $13,155.64 | $5,394.96 | $7,760.68 | $1,287,029.55 |
| 55 | Nov 2017 | $13,155.64 | $5,362.62 | $7,793.02 | $1,279,236.53 |
| 56 | Dec 2017 | $13,155.64 | $5,330.15 | $7,825.49 | $1,271,411.04 |
| **#** | **Date** | **Pmt** | **Interest** | **Principal** | **Balance** |
| 57 | Jan 2018 | $13,155.64 | $5,297.55 | $7,858.09 | $1,263,552.95 |
| 58 | Feb 2018 | $13,155.64 | $5,264.80 | $7,890.84 | $1,255,662.11 |
| 59 | Mar 2018 | $13,155.64 | $5,231.93 | $7,923.71 | $1,247,738.40 |
| 60 | Apr 2018 | $13,155.64 | $5,198.91 | $7,956.73 | $1,239,781.67 |
| 61 | May 2018 | $13,155.64 | $5,165.76 | $7,989.88 | $1,231,791.79 |
| 62 | Jun 2018 | $13,155.64 | $5,132.47 | $8,023.17 | $1,223,768.62 |
| 63 | Jul 2018 | $13,155.64 | $5,099.04 | $8,056.60 | $1,215,712.02 |
| 64 | Aug 2018 | $13,155.64 | $5,065.47 | $8,090.17 | $1,207,621.85 |
| 65 | Sep 2018 | $13,155.64 | $5,031.76 | $8,123.88 | $1,199,497.97 |
| 66 | Oct 2018 | $13,155.64 | $4,997.91 | $8,157.73 | $1,191,340.24 |
| 67 | Nov 2018 | $13,155.64 | $4,963.92 | $8,191.72 | $1,183,148.52 |
| 68 | Dec 2018 | $13,155.64 | $4,929.79 | $8,225.85 | $1,174,922.67 |
| **#** | **Date** | **Pmt** | **Interest** | **Principal** | **Balance** |
| 69 | Jan 2019 | $13,155.64 | $4,895.51 | $8,260.13 | $1,166,662.54 |
| 70 | Feb 2019 | $13,155.64 | $4,861.09 | $8,294.55 | $1,158,367.99 |
| 71 | Mar 2019 | $13,155.64 | $4,826.53 | $8,329.11 | $1,150,038.88 |

| # | Date | Pmt | Interest | Principal | Balance |
|---|------|-----|----------|-----------|---------|
| 72 | Apr 2019 | $13,155.64 | $4,791.83 | $8,363.81 | $1,141,675.07 |
| 73 | May 2019 | $13,155.64 | $4,756.98 | $8,398.66 | $1,133,276.41 |
| 74 | Jun 2019 | $13,155.64 | $4,721.99 | $8,433.65 | $1,124,842.76 |
| 75 | Jul 2019 | $13,155.64 | $4,686.84 | $8,468.80 | $1,116,373.96 |
| 76 | Aug 2019 | $13,155.64 | $4,651.56 | $8,504.08 | $1,107,869.88 |
| 77 | Sep 2019 | $13,155.64 | $4,616.12 | $8,539.52 | $1,099,330.36 |
| 78 | Oct 2019 | $13,155.64 | $4,580.54 | $8,575.10 | $1,090,755.26 |
| 79 | Nov 2019 | $13,155.64 | $4,544.81 | $8,610.83 | $1,082,144.43 |
| 80 | Dec 2019 | $13,155.64 | $4,508.94 | $8,646.70 | $1,073,497.73 |
| # | Date | Pmt | Interest | Principal | Balance |
| 81 | Jan 2020 | $13,155.64 | $4,472.91 | $8,682.73 | $1,064,815.00 |
| 82 | Feb 2020 | $13,155.64 | $4,436.73 | $8,718.91 | $1,056,096.09 |
| 83 | Mar 2020 | $13,155.64 | $4,400.40 | $8,755.24 | $1,047,340.85 |
| 84 | Apr 2020 | $13,155.64 | $4,363.92 | $8,791.72 | $1,038,549.13 |
| 85 | May 2020 | $13,155.64 | $4,327.29 | $8,828.35 | $1,029,720.78 |
| 86 | Jun 2020 | $13,155.64 | $4,290.50 | $8,865.14 | $1,020,855.64 |
| 87 | Jul 2020 | $13,155.64 | $4,253.57 | $8,902.07 | $1,011,953.57 |
| 88 | Aug 2020 | $13,155.64 | $4,216.47 | $8,939.17 | $1,003,014.40 |
| 89 | Sep 2020 | $13,155.64 | $4,179.23 | $8,976.41 | $994,037.99 |
| 90 | Oct 2020 | $13,155.64 | $4,141.82 | $9,013.82 | $985,024.17 |
| 91 | Nov 2020 | $13,155.64 | $4,104.27 | $9,051.37 | $975,972.80 |
| 92 | Dec 2020 | $13,155.64 | $4,066.55 | $9,089.09 | $966,883.71 |
| # | Date | Pmt | Interest | Principal | Balance |
| 93 | Jan 2021 | $13,155.64 | $4,028.68 | $9,126.96 | $957,756.75 |
| 94 | Feb 2021 | $13,155.64 | $3,990.65 | $9,164.99 | $948,591.76 |
| 95 | Mar 2021 | $13,155.64 | $3,952.47 | $9,203.17 | $939,388.59 |
| 96 | Apr 2021 | $13,155.64 | $3,914.12 | $9,241.52 | $930,147.07 |
| 97 | May 2021 | $13,155.64 | $3,875.61 | $9,280.03 | $920,867.04 |
| 98 | Jun 2021 | $13,155.64 | $3,836.95 | $9,318.69 | $911,548.35 |
| 99 | Jul 2021 | $13,155.64 | $3,798.12 | $9,357.52 | $902,190.83 |
| 100 | Aug 2021 | $13,155.64 | $3,759.13 | $9,396.51 | $892,794.32 |
| 101 | Sep 2021 | $13,155.64 | $3,719.98 | $9,435.66 | $883,358.66 |
| 102 | Oct 2021 | $13,155.64 | $3,680.66 | $9,474.98 | $873,883.68 |
| 103 | Nov 2021 | $13,155.64 | $3,641.18 | $9,514.46 | $864,369.22 |
| 104 | Dec 2021 | $13,155.64 | $3,601.54 | $9,554.10 | $854,815.12 |
| # | Date | Pmt | Interest | Principal | Balance |
| 105 | Jan 2022 | $13,155.64 | $3,561.73 | $9,593.91 | $845,221.21 |
| 106 | Feb 2022 | $13,155.64 | $3,521.76 | $9,633.88 | $835,587.33 |
| 107 | Mar 2022 | $13,155.64 | $3,481.61 | $9,674.03 | $825,913.30 |
| 108 | Apr 2022 | $13,155.64 | $3,441.31 | $9,714.33 | $816,198.97 |
| 109 | May 2022 | $13,155.64 | $3,400.83 | $9,754.81 | $806,444.16 |

| | | | | |
|---|---|---|---|---|
| 110 | Jun 2022 | $13,155.64 | $3,360.18 | $9,795.46 | $796,648.70 |
| 111 | Jul 2022 | $13,155.64 | $3,319.37 | $9,836.27 | $786,812.43 |
| 112 | Aug 2022 | $13,155.64 | $3,278.39 | $9,877.25 | $776,935.18 |
| 113 | Sep 2022 | $13,155.64 | $3,237.23 | $9,918.41 | $767,016.77 |
| 114 | Oct 2022 | $13,155.64 | $3,195.90 | $9,959.74 | $757,057.03 |
| 115 | Nov 2022 | $13,155.64 | $3,154.40 | $10,001.24 | $747,055.79 |
| 116 | Dec 2022 | $13,155.64 | $3,112.73 | $10,042.91 | $737,012.88 |
| # | Date | Pmt | Interest | Principal | Balance |
| 117 | Jan 2023 | $13,155.64 | $3,070.89 | $10,084.75 | $726,928.13 |
| 118 | Feb 2023 | $13,155.64 | $3,028.87 | $10,126.77 | $716,801.36 |
| 119 | Mar 2023 | $13,155.64 | $2,986.67 | $10,168.97 | $706,632.39 |
| 120 | Apr 2023 | $13,155.64 | $2,944.30 | $10,211.34 | $696,421.05 |
| 121 | May 2023 | $13,155.64 | $2,901.75 | $10,253.89 | $686,167.16 |
| 122 | Jun 2023 | $13,155.64 | $2,859.03 | $10,296.61 | $675,870.55 |
| 123 | Jul 2023 | $13,155.64 | $2,816.13 | $10,339.51 | $665,531.04 |
| 124 | Aug 2023 | $13,155.64 | $2,773.05 | $10,382.59 | $655,148.45 |
| 125 | Sep 2023 | $13,155.64 | $2,729.79 | $10,425.85 | $644,722.60 |
| 126 | Oct 2023 | $13,155.64 | $2,686.34 | $10,469.30 | $634,253.30 |
| 127 | Nov 2023 | $13,155.64 | $2,642.72 | $10,512.92 | $623,740.38 |
| 128 | Dec 2023 | $13,155.64 | $2,598.92 | $10,556.72 | $613,183.66 |
| # | Date | Pmt | Interest | Principal | Balance |
| 129 | Jan 2024 | $13,155.64 | $2,554.93 | $10,600.71 | $602,582.95 |
| 130 | Feb 2024 | $13,155.64 | $2,510.76 | $10,644.88 | $591,938.07 |
| 131 | Mar 2024 | $13,155.64 | $2,466.41 | $10,689.23 | $581,248.84 |
| 132 | Apr 2024 | $13,155.64 | $2,421.87 | $10,733.77 | $570,515.07 |
| 133 | May 2024 | $13,155.64 | $2,377.15 | $10,778.49 | $559,736.58 |
| 134 | Jun 2024 | $13,155.64 | $2,332.24 | $10,823.40 | $548,913.18 |
| 135 | Jul 2024 | $13,155.64 | $2,287.14 | $10,868.50 | $538,044.68 |
| 136 | Aug 2024 | $13,155.64 | $2,241.85 | $10,913.79 | $527,130.89 |
| 137 | Sep 2024 | $13,155.64 | $2,196.38 | $10,959.26 | $516,171.63 |
| 138 | Oct 2024 | $13,155.64 | $2,150.72 | $11,004.92 | $505,166.71 |
| 139 | Nov 2024 | $13,155.64 | $2,104.86 | $11,050.78 | $494,115.93 |
| 140 | Dec 2024 | $13,155.64 | $2,058.82 | $11,096.82 | $483,019.11 |
| # | Date | Pmt | Interest | Principal | Balance |
| 141 | Jan 2025 | $13,155.64 | $2,012.58 | $11,143.06 | $471,876.05 |
| 142 | Feb 2025 | $13,155.64 | $1,966.15 | $11,189.49 | $460,686.56 |
| 143 | Mar 2025 | $13,155.64 | $1,919.53 | $11,236.11 | $449,450.45 |
| 144 | Apr 2025 | $13,155.64 | $1,872.71 | $11,282.93 | $438,167.52 |
| 145 | May 2025 | $13,155.64 | $1,825.70 | $11,329.94 | $426,837.58 |
| 146 | Jun 2025 | $13,155.64 | $1,778.49 | $11,377.15 | $415,460.43 |
| 147 | Jul 2025 | $13,155.64 | $1,731.09 | $11,424.55 | $404,035.88 |
| 148 | Aug 2025 | $13,155.64 | $1,683.48 | $11,472.16 | $392,563.72 |

01/2014

Free-Online-Calculator-Use.com: Loan Pay Off Calculator

| # | Date | Pmt | Interest | Principal | Balance |
|---|------|-----|----------|-----------|---------|
| 149 | Sep 2025 | $13,155.64 | $1,635.68 | $11,519.96 | $381,043.76 |
| 150 | Oct 2025 | $13,155.64 | $1,587.68 | $11,567.96 | $369,475.80 |
| 151 | Nov 2025 | $13,155.64 | $1,539.48 | $11,616.16 | $357,859.64 |
| 152 | Dec 2025 | $13,155.64 | $1,491.08 | $11,664.56 | $346,195.08 |
| # | Date | Pmt | Interest | Principal | Balance |
| 153 | Jan 2026 | $13,155.64 | $1,442.48 | $11,713.16 | $334,481.92 |
| 154 | Feb 2026 | $13,155.64 | $1,393.67 | $11,761.97 | $322,719.95 |
| 155 | Mar 2026 | $13,155.64 | $1,344.67 | $11,810.97 | $310,908.98 |
| 156 | Apr 2026 | $13,155.64 | $1,295.45 | $11,860.19 | $299,048.79 |
| 157 | May 2026 | $13,155.64 | $1,246.04 | $11,909.60 | $287,139.19 |
| 158 | Jun 2026 | $13,155.64 | $1,196.41 | $11,959.23 | $275,179.96 |
| 159 | Jul 2026 | $13,155.64 | $1,146.58 | $12,009.06 | $263,170.90 |
| 160 | Aug 2026 | $13,155.64 | $1,096.55 | $12,059.09 | $251,111.81 |
| 161 | Sep 2026 | $13,155.64 | $1,046.30 | $12,109.34 | $239,002.47 |
| 162 | Oct 2026 | $13,155.64 | $995.84 | $12,159.80 | $226,842.67 |
| 163 | Nov 2026 | $13,155.64 | $945.18 | $12,210.46 | $214,632.21 |
| 164 | Dec 2026 | $13,155.64 | $894.30 | $12,261.34 | $202,370.87 |
| # | Date | Pmt | Interest | Principal | Balance |
| 165 | Jan 2027 | $13,155.64 | $843.21 | $12,312.43 | $190,058.44 |
| 166 | Feb 2027 | $13,155.64 | $791.91 | $12,363.73 | $177,694.71 |
| 167 | Mar 2027 | $13,155.64 | $740.39 | $12,415.25 | $165,279.46 |
| 168 | Apr 2027 | $13,155.64 | $688.66 | $12,466.98 | $152,812.48 |
| 169 | May 2027 | $13,155.64 | $636.72 | $12,518.92 | $140,293.56 |
| 170 | Jun 2027 | $13,155.64 | $584.56 | $12,571.08 | $127,722.48 |
| 171 | Jul 2027 | $13,155.64 | $532.18 | $12,623.46 | $115,099.02 |
| 172 | Aug 2027 | $13,155.64 | $479.58 | $12,676.06 | $102,422.96 |
| 173 | Sep 2027 | $13,155.64 | $426.76 | $12,728.88 | $89,694.08 |
| 174 | Oct 2027 | $13,155.64 | $373.73 | $12,781.91 | $76,912.17 |
| 175 | Nov 2027 | $13,155.64 | $320.47 | $12,835.17 | $64,077.00 |
| 176 | Dec 2027 | $13,155.64 | $266.99 | $12,888.65 | $51,188.35 |
| # | Date | Pmt | Interest | Principal | Balance |
| 177 | Jan 2028 | $13,155.64 | $213.28 | $12,942.36 | $38,245.99 |
| 178 | Feb 2028 | $13,155.64 | $159.36 | $12,996.28 | $25,249.71 |
| 179 | Mar 2028 | $13,155.64 | $105.21 | $13,050.43 | $12,199.28 |
| 180 | Apr 2028 | $12,250.11 | $50.83 | $12,199.28 | $0.00 |
| | Totals | $2,367,547.43 | $703,947.43 | $1,663,600.00 | $0.00 |

Schedule created with Loan Pay Off Calculator
at http://www.free-online-calculator-use.com/loan-pay-off-calculator.html